DAVID A. VASON *et al.*, plaintiffs in error, *vs.* JEREMIAH BEALL, trustee, defendant in error.

1. Debts are not mutual when one is by the defendants as principal and surety, to the plaintiff as trustee of a minor, and the other is by the plaintiff as an individual, to the defendants as co-partners. The latter debt is not a set-off to the former.

2. Promise by a trustee to allow his personal debt as a credit upon a note held by him as trustee, is not binding on the trust. Breach thereof is no defense to the note, even though the personal debt may have become barred by the statute from delay to sue induced by the promise.

3. New promise to pay in a particular way needs to be in writing, the same as other new promises.

4. A conversation by the creditor with the principal debtor, resulting in the granting of solicited indulgence as a gratuity or favor, will not discharge the surety. The court's charge to this effect, taken with the context, and construed in the light of the evidence, was relevant and correct.

5. When it has been already charged that the legal consequence of certain facts would be to relieve the surety, the proposition need not be repeated with needless additions or variations.

6. When it is said that an offer to pay, with *possession* of the money, was sufficient, the implication is, that *production* of the money was unnecessary.

7. For a principal debtor to be discharged because he invested for his creditor in bonds, with some apparent authority from the latter, but with no direction to hold the bonds, if he never tendered or reported them, but retained them till they perished, he must show that he invested in the creditor's name, or render a reason why he invested otherwise, or why he did not tender, or, at least, report.

8. To render a verdict on the principles of equity, is to do between the parties what is right and equitable, according to the evidence, and the law as given in charge.

9. An agreement to do "what is right," raises the question of what is right, under all the circumstances, and where the ordinance of 1865 applies, this question is for consideration by the jury, and not for

final decision by the court in the shape of instructions dictating the verdict.

10. Whether the plaintiff rejected Confederate money offered by other debtors, being wholly irrelevant, his evidence on the subject was not admissible, nor was evidence admissible to contradict it.

11. Evidence, though conflicting, sufficient; no material error, etc.

Trusts. Set-off. Contracts. Statute of Limitations. Principal and Security. Debtor and Creditor. Charge of Court. Tender. Scaling Ordinance. Evidence. Before Judge Kiddoo. Dougherty Superior Court. October Term, 1876.

On May 8th, 1868, Jeremiah Beall, as trustee for Jesse S. Beall, a minor, brought complaint against David A. Vason, as principal, and John A. Davis, as security, on a note dated June 11th, 1862, signed by said defendants, whereby they, or either of them, promised to pay, twelve months after the date thereof, to William Sanford or bearer, five thousand dollars. The defendants pleaded as follows:

1st. The general issue.

2d. That the note was given for the loan of Confederate money by the plaintiff to Vason, under an agreement that it was to be paid at maturity in like currency. That such Confederate money was tendered to the plaintiff, at the maturity of said note, on or about June 14th, 1863, but the said plaintiff refused to accept the same. That plaintiff requested the said Vason to keep the money for another year, but said defendant refused to accede to this. That plaintiff then stated that if said Vason would keep said money for another year, and was unable to use it, or lost anything on it, the loss should be plaintiff's. That upon these terms said Vason retained the money, and not being able to use it otherwise, invested it in Confederate bonds, which he now has, and which are wholly worthless.

3d. That at the maturity of said note, the Confederate treasury notes in which it was to be paid, were not worth exceeding $769.20 in gold.

4th. That the plaintiff was, at the commencement of this

Vason *et al.*, *vs.* Beall, trustee.

suit, and now is, indebted to the firm of Vason & Davis, composed of these defendants, in the sum of $903.00, with interest from January 1st, 1868, for professional services rendered as attorneys. That the plaintiff agreed that this indebtedness should be set-off against said note, and that defendants, relying upon this promise, have failed to take any steps to enforce the collection of this counter-claim, until it is barred by the statute of limitations.

5th. The scaling ordinance.

Davis pleaded separately, that he was discharged by reason of the facts set forth in the second and fourth pleas above stated.

Numerous other pleas were filed, which are deemed immaterial here.

The plaintiff introduced his note and closed.

Vason testified, in substance, as follows: The note was given for the loan to him, by Beall, of Confederate treasury notes, with the understanding that this amount was to be repaid in like currency. Beall sent the note, with the money, to Davis, with instructions to have the note signed, with the latter as security, to deliver the money to witness, and to return the note to him. Witness never heard of Sanford in these transactions until the note was presented to him for his signature. The first time that Beall was in Albany after the note matured, witness stated to him that he was ready to pay it. Beall said he had no use for the money, and begged witness to keep it. Witness replied that he had no use for it. Beall begged him to keep it, and do the best he could with it. Witness replied that if he could not do any better with it, he could at least invest it in bonds of the Confederate states. Beall told him to keep the money and do the best he could with it, and if he sustained any loss, he would make it all right. On the faith of this promise, witness kept the identical money which he then had on hand, and failing to use it for any advantageous purpose, finally invested it in bonds of the Confederate states, which are now utterly worthless. This loss resulted

Vason *et al.*, *vs.* Beall, trustee.

from the above agreement; for, had it not been made, he would not have kept the money and so invested it.    Beall neither took the money, nor offered to take it.

Davis testified, in substance, as follows: In 1866 Beall was a large cotton buyer, in Albany, and had a great deal of law business in that vicinity.  The defendants, as the firm of Vason & Davis, were his attorneys, and he became largely indebted to them for professional services.  Witness presented a bill for these services, when Beall remarked (that there was a settlement to be had between him and Vason in reference to the note now sued on, and that the amount of the bill so presented should be credited and allowed in said settlement, so soon as it was agreed upon between them.) Witness stated that he thought the note was paid, to which Beall replied, "No, it is not paid; but Vason, about the time it fell due, offered to pay it to me in Confederate money; but I refused it, and told him to use the money otherwise, if he could, and if he sustained any loss in the use of it that I would make it all right."  Witness then stated that if Beall expected anything on said note, he would have to get it from Vason, as witness felt that he was under no obligation, either legal or moral, to pay one cent on it.    Beall replied that there was no danger of witness being held liable, as Vason and he were about to settle it— the only difference between them being as to how the note should be scaled.

The portion of the above testimony, in parenthesis, was excluded by the court.

Barber's tables were introduced.

Beall testified, in substance, as follows: In the spring of 1862, Vason made application to him for a loan, saying that he understood that William Sanford, of Baldwin county, was a capitalist, had money to lend, and that witness sometimes negotiated loans for him.  He stated that he would make a note, with John A. Davis as security, and witness could take it to Baldwin county with him.  Witness took the note sued on, and presented it to Sanford, who stated

Vason *et al.*, *vs.* Beall, trustee.

that he had about that much money on hand, but there were half a dozen applications for it.  At witness' solicitation he took the note.  Vason acknowledged his obligation to witness for the favor, remarking that it would be of much service to him, and that he could use it to great advantage. A month or two before the note fell due, Vason asked witness if he wished the money on the note.  Witness replied that Sanford was dead, and he was his executor, and that he did not then need the money.  He said that he would like to let the note run until next winter.  Witness stated that he might have the indulgence if it was any accommodation to him.  Nothing was said about Confederate money in the future, or any probable loss.  There was no pledge or promise made ; everybody was glad to get money at that time. Vason neither tendered witness the money, nor stated that he had it on hand.  In the winter following, witness was in Albany continuously, and Vason manifested no disposition to pay the note.  Witness was receiving Confederate money for all debts due the estate.  He never did refuse it, even to the time of General Lee's surrender.  Vason knew this. Witness was again in Albany during the succeeding winter, when Vason had another opportunity of paying the note. In April, 1864, witness funded with Y. G. Rust, of Albany, $10,500.00 in Confederate money, which he had collected in the neighborhood for the estate represented by him, two years after the note sued on matured.  The value of the note is $2,500.00 in greenbacks, with interest from date. This is what the plaintiff is entitled to recover.  Vason never proposed to pay the amount due on the note, either before or after its maturity.  Witness never told Vason to use the money, and that, if it was lost, he would do what was right, or anything else to the effect that he would bear or share the loss.

For the purpose of impeaching Beall, the defendant offered in evidence the answers of Rollin D. Mallory to certain interrogatories, to the effect that in the summer of 1862 he borrowed Confederate money from the plaintiff, to

Vason *et al.*, *vs.* Beall, trustee.

be re-paid one year thereafter in like currency. That at the maturity of the note given for this loan, witness offered the plaintiff Confederate treasury notes in payment thereof, but he declined to receive them.

This testimony was excluded.

The jury found for the plaintiff $625.00, with interest from maturity of note.

The defendants moved for a new trial upon the following grounds, to-wit:

1. Because the court erred in striking the fourth plea.

2. Because the verdict is contrary to the following charges of the court:

" If the jury are satisfied, from the evidence, that said note was given by defendants, the one as principal and the other as security, to Beall for Sanford, for the loan of Confederate treasury notes and interest thereon, and it was the understanding and agreement of the parties to said contract, at the making thereof, that the said sum of $5,000.00 in said note specified, was to be Confederate treasury notes, and that Vason, the principal, at and after the maturity of said note, went to Beall, he then and there being the holder of said note, either as the executor of Sanford, or as trustee of Jesse Beall, and offered to pay the whole amount due on the same, he, the said Vason, being then and there in possession of a sufficiency of said treasury notes to make the payment, and the said Beall neglected and omitted, or refused to take said notes in payment and discharge of said note, then this was such an act on the part of said Beall, as the holder of said note, as discharges Davis, the security."

" If Vason did, in fact, offer to pay said money to Beall, as above stated, and Beall did hold and control said note as executor of Sanford, or as trustee for Jesse Beall, under the will of Sanford, and he neglected or refused to take said money when so offered, and, instead of taking the same, persuaded or induced the said Vason not to pay him the money, by promising him that if he did not pay the money

Vason *et al.*, *vs.* Beall, trustee.

and would use it otherwise, and sustained loss on it, that then the said Beall would make it all right, and Vason, on the faith of this promise, did not pay, but kept the money on such promise, then this was such an act on the part of Beall as discharged Davis from all liability on the note."

3. Because the court erred in qualifying the above charges as follows : " but if the jury should be satisfied that what occurred in these respects amounted only to a conversation between Vason and Beall as to extension of day of payment, or about its payment, and no such act was done by plaintiff as charged above, then Davis is not discharged by such conversation."

4. Because the court refused to charge that the facts set forth in the second division of the charge presented in the second ground, constituted such a *change of the contract* as discharged Davis.

5. Because the court refused to charge that such facts constituted a new contract which would discharge Davis.

6. Because the court erred in charging, after reading the scaling ordinance of 1865, that it was for the jury, under the evidence and instructions, to do between the parties what they thought was right and equitable.

7. Because the court erred in charging that if Beall induced Vason not to pay the note when it fell due by promising that if he would keep and invest the money otherwise, and loss was incurred, that he would make it all right, and Vason, acting on this agreement, invested the money, as the agent of Beall, in other securities, for Beall, and the same was lost, then the loss would be Beall's, and the defendants were discharged ; but if Vason invested the money in other securities in his own name, and not that of Beall, then the loss of such securities was not Beall's, and the defendants were not thereby discharged.

8. Because the court erred in refusing to charge that if Vason did offer to pay the money, and Beall said he would not take it, then it was not necessary for Vason to present the money.

9. Because the court erred in excluding the answers of Mallory to the interrogatories propounded to him.

10. Because the court excluded the evidence of Davis as to account of Vason & Davis against Beall, and to the effect that the latter agreed to pay it in the settlement to be had of the note now sued on.

The motion was overruled, and the defendants excepted.

R. F. LYON, for plaintiffs in error.

C. B. WOOTEN, by A. HOOD, for defendant.

BLECKLEY, Judge.

1. Where the action is by the trustee of a minor, against the makers of a promissory note payable to a third person or bearer, one of the makers executing the note as principal, the other as surety, an account in favor of a partnership composed of the two defendants, and against the plaintiff, not as trustee, but as an individual, is not proper matter of set-off. The cause of action and the alleged set-off are not mutual debts.

2. A promise by a trustee that he will allow the amount of an account against himself personally, as a credit on a note held by him as trustee, is not obligatory upon the trust; and the breach of such a promise is no defense to an action upon the note, even though the account has become barred by the statute of limitations in consequence of delay to sue induced by the promise.

3. For the purpose of avoiding the statute of limitations, a promise to pay the debt in a particular way, as to allow it in a future settlement, requires a writing to establish it, the same as any other new promise. While a parol contract would not serve to prevent the bar of the statute from attaching, the breach of it after the bar had attached, might possibly be a cause of action—55 *Ga.*, 1. The forbearance to sue till too late to sue, might be treated as performance,

Vason *et al.*, *vs.* Beall, trustee.

or part performance, on one side, and thus any writing be dispensed with as evidence—Code, §1951. But if any action is maintainable, the trustee, as such, is not the party to be sued.

4. There being before the jury two lines of evidence, one tending to show a mere conversation resulting in the gratuitous grant of solicited indulgence, the other tending to show an offer to pay the debt, failure or refusal of the creditor to accept payment, and certain stipulations for the retention and use of the money by the principal debtor, the court having charged the jury, first, that if the principal, with money enough in his possession to pay the whole amount of the note, offered to pay it, and the creditor neglected or refused to take the money, this would be such an act on the part of the creditor as would discharge the surety; and, secondly, that if, when the money was so offered, the creditor, instead of accepting it, induced the principal not to pay it, by promising that if he used it otherwise and sustained loss, he, the creditor, would make it all right, this, also, would be such an act on the part of the creditor as would discharge the surety:—the court did not err in adding, that if what occurred amounted only to a conversation touching payment, or touching the extension of the day of payment, and no such act was done by the creditor, the surety would not be discharged.

5. When the court has charged the jury that certain facts, if true, would discharge the surety, it is unnecessary to repeat the same thing with variations; such as, "this was such a change of the contract as discharged the surety."

6. After the court has charged that an offer to pay would be sufficient, if the person making the offer had money enough in his possession, there is no occasion to add that the money need not have been presented.

7. In order to discharge the principal debtor himself, on the ground that he invested Confederate money for the creditor, he must show that he invested it in the creditor's name, or render some reason why he invested it otherwise.

In 35 *Ga.*, 216, there was a direction to hold until the creditor called, as well as clear authority to invest.

8. In administering the ordinance of 1865 for the adjust-ment of Confederate contracts, the jury may be charged, among other things, that it is for them, under the evidence and the instructions, to do between the parties what is right and equitable. This is equivalent to directing them to render a verdict upon the principles of equity.

9. An agreement " to do what is right," raises the question of what is right under all the circumstances, and where the ordinance of 1865 is applicable, this question is for consideration by the jury, and not for final decision by the court in the shape of instructions dictating the verdict.

10. Whether or not the same creditor rejected Confederate money when offered by other debtors, was wholly irrelevant; and his statement, in his evidence on the subject, was not admissible, nor was evidence admissible to contradict it.

11. The verdict being rendered under the ordinance of 1865, and no material error being found in the rulings of the court, and the evidence being conflicting, the judgment denying a new trial is affirmed.

Judgment affirmed.